**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MISHELE RIVERA,** | : | |
| **683 N. Wahneta Street, Apartment 315** | : | |
| **Allentown, PA 18109** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | **No.** |
| **vs.** | : | |
| | : | |
| **COUNTY OF LEHIGH,** | : | |
| **Lehigh County Government Center** | : | |
| **17 South 7th Street** | : | |
| **Allentown, PA 18101** | : | |
| | : | |
| **UNIDENTIFIED AGENTS AND** | : | |
| **EMPLOYEES OF THE COUNTY OF** | : | |
| **LEHIGH, JOHN AND JANES DOES I-X,** | : | |
| **Lehigh County Government Center** | : | |
| **17 South 7th Street** | : | |
| **Allentown, PA 18101** | : | |
| | : | |
| **WARDEN KYLE A. RUSSELL,** | : | |
| **38 N. Fourth Street** | : | |
| **Allentown, PA 18102** | : | |
| | : | |
| **DIRECTOR OF CORRECTIONS** | : | |
| **JANINE DONATE,** | : | |
| **38 N. Fourth Street** | : | |
| **Allentown, PA 18102** | : | **Jury Trial Demanded** |
| | : | |
| **UNIDENTIFIED EMPLOYEES, AGENTS** | : | |
| **AND CORRECTION OFFICERS OF** | : | |
| **THE LEHIGH COUNTY JAIL,** | : | |
| **JOHN AND JANE DOES XI-XX,** | : | |
| **38 N. Fourth Street** | : | |
| **Allentown, PA 18102** | : | |
| | : | |
| **Defendants.** | : | |

1

## COMPLAINT

NOW COMES, the Plaintiff, MISHELE RIVERA, by and through her legal counsel, Joshua E. Karoly, Esquire, and does hereby allege and aver the following:

## I.   JURISDICTION AND VENUE

1.   This action is instituted under the United States Constitution, particularly under the provisions of the Fourteenth Amendment, and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act," as amended, 42 U.S.C. §§ 1983, and 1988.

2.   This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331, § 1343(a)(3), § 1343(a)(4) and § 1367(a), regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3.   Venue in the Eastern District is properly laid pursuant to 28 U.S.C. § 1391, insofar as the alleged actionable conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and within the geographical limits of Allentown, Lehigh County, Pennsylvania, in particular.

## II.   PARTIES

4.   Plaintiff, Mishele Rivera ("Plaintiff"), is an adult individual who has a home address of 683 N. Wahneta Street, Apartment 315, Allentown,

2

Lehigh County, Pennsylvania 18109. She was at all relevant times, a citizen of the Commonwealth of Pennsylvania.

5.  Defendant, County of Lehigh, was and still is, a domestic governmental entity duly organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a principal place of business located at the Lehigh County Government Center, 17 South 7th Street, Allentown, Pennsylvania 18101. Hereinafter, the County of Lehigh shall be referred to as the "County." And, at all times relevant hereto, the "County," with guidance from its Warden and Director of Corrections, operated the Lehigh County Jail located at 38 N. Fourth Street, Allentown, Pennsylvania 18102. Hereinafter the Lehigh County Jail, shall be referred to as the "Jail" or "LCJ." The Defendant County of Lehigh operated the Lehigh County Jail, a direct supervision facility which, until 2014, was formerly known as the Lehigh County Prison. It is located at 38 North Fourth Street, Allentown, PA 18102. The Lehigh County Department of Corrections operates the Lehigh County Jail and functions as a County Department, with a Director appointed by the County Executive, and confirmed by the Board of Commissioners.

6.  Defendants Unidentified Agents and Employees of the County of Lehigh, are adult individuals who cannot be identified at this time, but are persons

whose identities are believed to be ascertainable hereafter during the discovery process provided under the Federal Rules of Civil Procedure. They are collectively labeled here as John and Jane Does I-X and may be referred to hereinafter as the "County Actors" and shall be included in each and every reference made to the "County," hereinafter.  Their primary place of business is located at the Lehigh County Government Center, 17 South 7th Street Allentown, Pennsylvania 18101.

7.     Defendant Kyle A. Russell is an adult individual and is the Warden of the Lehigh County Jail and has served in that capacity since his appointment by the Lehigh County Board of Commissioners on December 12, 2018, with a hire date of January 3, 2019, and a classification as a Warden 2 and, in that capacity serves as a supervisor and policymaker with regard to regulating all operations of the Jail. He is being sued herein in his individual capacity, in as much as the County of Leigh is a separately named Defendant and, suing him in his official capacity would be redundant. As a supervisor, decision and policymaker for the Lehigh County Jail, his conduct constitutes the official policy or custom of the County of Lehigh, rendering the County liable for the actions, or failures to act, committed by him, or his supervisors and subordinates, as complained of herein.  Hereinafter, Russell shall be referred to as "Warden"

4

or "Russell." The punitive damages being sought in the within action are sought against the individual Defendants, Russell included, but only in their individual capacities, even though their actions were clearly committed under color of law. The Warden operates primarily out of his office located at the Lehigh County Jail at 38 N. Fourth Street, Allentown, Pennsylvania 18102.

8.   Defendant Janine Donate is the Director of Corrections and performs all roles, functions and responsibilities typically associated with a traditional Pennsylvania County Prison Board and, she is responsible for the overall administration of the County Jail and must ensure that its operation comports with state and federal constitutional standards and regulations, current case law, as well as ensure that all personnel act in accordance with established policy and procedure, and provides a critical linkage between the Department of Corrections, other branches of County government, as well as other law enforcement agencies and the community. Consequently, she acts as both a decision-maker and supervisor for both the Lehigh County Jail, Lehigh County, and the Lehigh County Department of Corrections. She operates primarily out of the Lehigh County Jail, located at 38 N. Fourth Street, Allentown, PA 18101.

9.      Defendants Unidentified Employees, Agents and Correction Officers of
        the Lehigh County Jail, are adult individuals who cannot be identified at
        this time but are persons whose identities are believed to be ascertainable
        hereafter during the discovery process provided under the Federal Rules of
        Civil Procedure.  They are collectively labeled here as John and Jane Does
        XI-XX and may be referred to hereinafter as the "County Actors."  Their
        place of business is the above-captioned Lehigh County Jail address.

10.     The punitive damages sought hereinafter are sought only against the
        individually named, and to be named, Defendants in their individual
        capacities, even though each may be sued in their official capacities as well
        as their individual capacities.

## III.   **PRE-DISCOVERY FACTUAL ALLEGATIONS**

11.     The Plaintiff has been denied access to pertinent records which are in the
        exclusive possession of the Defendants, including some which are
        generally historically accessible to the public. By way of example only,
        documents normally reviewable in the Jail's Central Booking Department
        were removed by the Jail's Internal Affairs Investigator, and not returned.
        Accordingly, the averments contained hereinafter are necessarily based
        upon the Plaintiff's present knowledge, information and belief, and/or
        made subject to revision when the records are provided hereinafter in

accordance with the discovery provisions of the Federal Rules of Civil procedure and or, the compunction of a Court Order, if necessary. Moreover, to the extent that any averments made hereinafter may appear to be inconsistent or contradictory, alternate theories of recovery based thereon are necessarily being advanced and subject to post-discovery modifications. With that in mind, the Plaintiff states the following.

12. Between January 28, 2021, and February 17, 2021, Dominic Escalera, the then boyfriend of Plaintiff Mishele Rivera, arranged for the murders of the Plaintiff, and her brother.

13. Escalera coordinated the murders for hire with what turned out to be an undercover Pennsylvania State Trooper through text messages and phone calls, which were recorded by law enforcement and preserved.

14. On February 17, 2021, to further his murder for hire scheme, Escalera drove to Allentown to meet the undercover Trooper. Escalera showed to whom he believed to be a hitman, the Plaintiff's residence, provided him with a .44 caliber magnum revolver to be utilized as the murder weapon, and then was dropped off at the Wind Creek Casino in Bethlehem for the purpose of establishing an alibi for him for the murders, which were about to be committed at his direction.

15.     It was at that time that Escalera was arrested and taken into custody by the
        ATF and Allentown Police.

16.     In the early morning hours of the next day, February 18, 2021, Escalera
        was formally charged by the Lehigh County District Attorney's Office
        with two (2) counts of Criminal Solicitation – Criminal Homicide,
        Possession of a Firearm Prohibited, and other lesser charges. Due to the
        extreme danger which he represented to the Plaintiff and her family, his
        bail was set in the amount of $500,000, cash.

17.     Escalera, as expected, was unable to post bail and he was immediately
        remanded and incarcerated at the Lehigh County Jail.

18.     Due to the extremely serious nature of Escalera's crimes, United States
        prosecutors were interested in prosecuting him federally.

19.     Escalera's state preliminary hearing was continued several times while he
        remained in custody in the Lehigh County Jail (presumably while the
        Federal Government prepared its charges), and on August 12, 2021, a
        federal grand jury returned an Indictment charging Escalera with two (2)
        counts of murder-for-hire and one (1) count of unlawfully possessing a
        firearm.

20.     A federal Arraignment was held on August 16, 2021, before U.S.
        Magistrate Judge Henry S. Perkin, whereat the Government's Motion for

Temporary Detention was granted, requiring that the Lehigh County Jail continue Escalera's incarceration on the said federal charges, in addition to his prior state-ordered detention. A Federal Detention Hearing was set for August 18, 2021.

21. On August 18th the Government argued its Motion for Escalera's Permanent Pretrial Federal Detention, stating as a basis therefore, the severity of the charges, the strength of the evidence against Escalera, and specifically detailing the fact that Escalera was a continued clear, direct and continuing danger to the Plaintiff and her brother, and constituted a flight risk as well.

22. Judge Perkin agreed with the Government, granted their request for permanent detention, and issued an Order remanding Escalera to the custody of the U.S. Marshals Service and directing his continued detention.

23. On August 20, 2021, Mr. Escalera appeared for his preliminary hearing on his state charges. At that time, the Lehigh County District Attorney's Office, apparently knowing that Mr. Escalera was Indicted federally and that federal Court Orders, and a federal detainer was lodged against him compelling his continued detention in the Lehigh County Jail, discontinued the state charges in favor of the federal prosecution.

24.    What occurred thereafter is inexplicable and could have led to the horrific successful completion of Escalera's original plan. Thankfully it did not. But it did nevertheless have serious and permanent consequences for the Plaintiff, as more fully detailed hereinafter.

25.    At approximately 3:20 p.m. in the afternoon of August 20th, despite the existing federal Court Orders, and the federal detainer which was previously provided to the Lehigh County Jail days earlier, and at least once again thereafter, unidentified Lehigh County employees at the Jail released Escalera, providing no prior notice to the Plaintiff, nor the District Attorney's Office, nor the County's Crime Victim's Advocate or federal nor any state law enforcement authorities.

26.    Predictably, Escalera's first stop, minutes later, was the Plaintiffs, Ms. Rivera's, residence. While there (and later elsewhere) Escalera assaulted and terrorized her for a total of approximately two (2) hours, which included threatening to kill her and her family, as he originally was prevented from doing by law enforcement.

27.    The Plaintiff was cooking dinner when she turned around and suddenly found Escalera standing in her kitchen. Escalera had gained entry into her home without her knowledge or permission.

28.   Plaintiff stood in her kitchen petrified with the belief that Escalera had come to murder her as he had not previously succeeded in doing.

29.   Plaintiff Facetimed her mother out of fear, in order that someone would see that Escalera was in her home, in case something happened to her. Fearful also for her daughter's safety, who was alone upstairs in her room, and at a time when Escalera was walking in  small circles with a crazed look in his eyes, like an animal about to pounce on its prey, the Plaintiff silently went upstairs and quietly told her daughter to leave the house immediately, which she did.

30.   Escalera would not let the Plaintiff leave her home. Escalera forcefully grabbed the Plaintiff and violently pushed her onto the couch and demanded that she stay on the couch to await her fate. Escalera then went around the house and locked the windows and doors. He then stated, "I told you I would get out," and threatened again to kill Plaintiff and her family.

31.   While Escalera was locking the Plaintiff in her own home, the Plaintiff was able to surreptitiously call the Lehigh County District Attorney's Office to tell them that Escalera was in her home.

32.   The District Attotney's Office representative expressed surprise and said they would check on how that happened and get back to her.

33.  Escalera then returned to the couch where the Plaintiff remained as directed, and then ordered the Plaintiff to drive with him to his brother's house in Allentown. The Plaintiff, knowing that firearms were present at Escalera's brother's home, and fearful Escalera would use those weapons on her, she pleaded with Escalera not to take her there. Escalera finally settled on having the Plaintiff going with him to the barber shop. Although the Plaintiff was also fearful that Escalera would have friends there and access again to weapons, she saw it as an opportunity to get into the public where aid might be available.

34.  While the Plaintiff was traveling to (and from) the barber shop, Escalera appeared alternately crazed, confused, anxious and maintained a distant, vacant stare; and, the singular intention that he had expressed at any time, was the killing of Plaintiff, which the Plaintiff was convinced would shortly occur.

35.  The Plaintiff was covertly texting ATF agents in the car, who were apparently advised about Escalera's release form the District Attorney's Office, and when caught by Escalera, she stated as calmly as she could that it was just her mother who was checking on her and she stated that she just told her that everything was fine.

36. Escalera and the Plaintiff were only at the Barber Shop a matter of minutes. Escalera then demanded that he be taken back to Plaintiff's home.

37. The Plaintiff saw no opportunity to escape from Escalera during that brief entry into the barber shop, and saw no one she believed would assist her if she cried out for help – an act which she believed would only infuriate Escalera to the point of immediately carrying out his murderous threat. Instead, on their way home, by the Grace of God, the Plaintiff was able to text ATF agents that she and Escalera were returning to the Plaintiff's home.

38. When the Plaintiff and Escalera returned to Plaintiff's home, Escalera exited the car, and agents were able to immediately take him into custody.

39. Fortunately, members of law enforcement were able to take Mr. Escalera back into custody, and re-detain him at approximately 5:50 p.m., at the Lehigh County Jail, from which he never should have been released.

40. No explanation has ever been provided for Escalera's wrongful release, quite apart from the Defendants' obvious gross negligence and deliberate indifference to the health, safety and welfare of the Plaintiff who was caused to suffer severe and lasting damages.

41. As a direct and proximate result of the Defendants, acting alone or in concert, to wrongfully effect the release of prisoner Escalera, as indicated

above, and detailed further hereinafter, the Plaintiff was caused to suffer, *inter alia*, the following harms at the hands of Escalera, due to the reckless and deliberate indifferent affirmative actions of the Defendants, all or some of which injuries may be continuing in nature, and are likely to continue into the indeterminate future:

i. physical and mental pain and suffering, including discomfort, loss of use of bodily function, ill health, loss of sleep, and other emotional injuries including stigma, humiliation, PTSD, distress and emotional trauma;

ii. medical expenses;

iii. loss of life's pleasures;

iv. loss of income;

v. general damages arising from the violation of Plaintiff's Constitutional rights under the Fourteenth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution;

vi. punitive damages (except as to the County of Lehigh and the Defendants in their official capacities), which are justified factually as alleged herein, and legally, because the Defendants acted maliciously and/or wantonly in violating the Plaintiff's

Constitutionally (federal and state) protected rights, and intentionally, recklessly and willfully engaged in reprehensible and outrageous conduct not to be tolerated in a civilized society;

vii. those harms, losses and damages additionally detailed hereinafter; and

viii. Plaintiff further seeks counsel fees and costs as authorized by statute.

42. The Plaintiff suffers from nightmares, cannot sleep, and constantly lives in fear that prisoner Escalera will once again appear at her residence and attempt to murder her and her family. Due to the events of August 20, 2021, Ms. Rivera was evaluated by Dr. Steven E. Samuel. Dr. Samuel has diagnosed Ms. Rivera with "Complex PTSD and Persistent Depressive Disorder. Ms. Rivera's PTSD is classified as severe, whereas her Persistent Depressive Disorder is classified as moderate. Ms. Rivera's disorders are causally related to and exacerbated by the events she suffered at the hands of Mr. Escalera on August 20, 2021, as well as by her ongoing fear that these events will be repeated if he is again wrongfully released. There is no reasonable expectation that she will experience any spontaneous recovery. Whatever resiliency and coping abilities she possessed were extinguished on August 20, 2021. Her prognosis at this time is guarded."

43.     The conduct of the Defendants, acting alone or in concert, was deliberate, intentional, willful, wanton and foreseeably inflicted harm upon the Plaintiff and was committed with the reckless disregard for the infliction of pain and other harms upon the Plaintiff, entitling the Plaintiff to receive punitive damages in addition to compensatory damages, as well as costs and attorneys' fees as permitted under law.

44.     At all times during the events described above, the Defendants were engaged in a joint venture.  These individual Defendants assisted each other in performing the various actions described, and lent their physical presence, support, intimidation and/or the authority of their position to each other during the said events.

45.     The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff and, it would be unreasonable for any Defendant to believe that they were not violating such rights as more clearly set forth in the Counts below.

46.     Plaintiff believes, and thus avers, that without the intervention of this Honorable Court, Plaintiff in particular, as well as others, are likely to suffer damages from repeated similar Constitutional violations in the future, requiring injunctive relief.

47.    The Defendants, individually and collectively, at all times pertinent to the claims asserted herein, acted under color of state law.

48.    While acting under color of law, the Defendants deprived the Plaintiff of various state and federal Constitutional rights as more fully set forth herein.

49.    Further, the conduct exhibited by subordinate Defendants, which resulted in the wrongful release of prisoner Escalera, was not unexpected. Neither were their actions the deeds of independent, non-supervisory actors. But, rather, they constituted predictable behaviors of subordinates who operated with perceived impunity due to the deliberate indifference of their supervisors and policymakers, and their deficient or deficiently enforced, training, policies, practices and customs, which operated as the moving force behind what the Defendants believed to be their unaccountable efforts to engage in what had become, all too likely, Constitutional deprivations.

50.    The likelihood is that, but for the alleged acts and omissions committed by the other Defendants, the injuries inflicted upon the Plaintiff would not have occurred.

51.    The exact reason(s) why and mechanics of how Escalera was wrongfully released from custody by the Defendants cannot be known for a certainty by the Plaintiff because said specific information is in the exclusive

custody and control of the defendants. However, Plaintiff believes and therefore avers, that discovery is likely to demonstrate one or more, or all of the known and/or unknown Defendants, will be shown to have participated in the wrongful release of prisoner Escalera and the inevitable harms endured by the Plaintiff as a direct and proximate result thereof.

## COUNT I
### Fourteenth Amendment Due Process Violation – State Created Danger / *Monell* Liability
### *Against All Defendants*

42.  The Plaintiff incorporates by reference the preceding paragraphs as if once again set forth herein.

43.  Plaintiff brings this civil rights action under 42 U.S.C. §1983 alleging that the Defendants, acting under color of state law, deprived her of her right secured by the Constitution to Substantive Due Process under the Fourteenth Amendment and her protected liberty interest in personal security, by wrongfully releasing Escalera from custody, a prisoner who had well-known intentions to kill her, and who, immediately after his unlawful release by Defendants, acted on those intentions by traveling to her home and seriously harming the Plaintiff as stated hereinbefore.

44.  The detailed factual averments appearing hereinbefore, support Plaintiff's claim under 42 U.S.C. §1983 based upon the "state-created danger" theory of liability, pursuant to which the Due Process Clause imposes an

affirmative duty upon the Defendant state actors here to protect the Plaintiff where their very own actions have created the precise danger and harm (i.e., wrongfully released prisoner, Dominic Escalera) which was inflicted upon the Plaintiff here; as well as the principles underpinning *Monell* liability.

45. The harm ultimately inflicted upon the Plaintiff, which was caused by prisoner Escalera, was foreseeable and fairly direct in that, *inter alia:*

1) Given the history of Escalera's past criminal conduct and threats toward the Plaintiff, the danger Escalera presented to the Plaintiff, if and when he was released from custody, was real, grave, obvious and foreseeable, if not inevitable;

2) Escalera's past dangerous criminal behavior was personally directed specifically at the Plaintiff, as once again would be Escalera's unabated intentions to harm her upon his release from custody;

3) The harms which Escalera actually inflicted upon the Plaintiff were directly administered by Escalera – precisely as one would foresee and find predictable;

4) The harms which Escalera inflicted upon the Plaintiff occurred within minutes of his wrongful release from custody by the

defendants, and were inflicted upon her in her own home, a place well-known to Escalera;

46. The Defendant state actors acted in willful disregard of, and deliberate indifference to, the Plaintiff's safety by inter alia:

   1) Intentionally ignoring Escalera's immediate prior history of violent behavior toward the Plaintiff, and his threats to harm her, which was known to the Defendants, as a result of the information the law required the Defendants to secure immediately upon Escalera's admission into Lehigh County Jail, pursuant to 37 Pa. Code §95.222; and the known clear and present danger to the Plaintiff, and those in her immediate orbit, which Escalera represented;

   2) Intentionally ignoring Court Orders and a federal detainer which required the Defendants to maintain continuous, full and uninterrupted custody of Escalera in their County Jail, and intentionally and/or recklessly, violating said Orders and detainer by affirmatively acting to wrongfully release him so that he could, seriously, foreseeably and directly, harm the Plaintiff as he did;

   3) Intentionally disregarding Jail rules and regulations, State administrative requirements and safeguards, training, American Correctional Association, and other nationally recognized correctional

standards, which exist for the precise purposes of avoiding the type of wrongful inmate release that occurred here;

4) Intentionally disregarding the common-law duty of exercising reasonable care to control Escalera to prevent him from inflicting the precise kind of harm upon Plaintiff which occurred here; and

5) Failing to warn the Plaintiff of Escalera's release from custody, as the law requires, so that she could attempt to prevent his unlawful release or, even reasonably protect herself from the serious threat the release created for the Plaintiff s well-being, and failing to notify state and federal members of law enforcement and/or the County Victim's Advocate about Escalera's pending release, so that they could oppose it or otherwise take actions to immediately protect the Plaintiff from said release.

47. A relationship existed between the state and the Plaintiff which was such that she was not merely a potential victim of Escalera's violence as a member of the public at large, but a member of a discrete class of persons with prior contact with Escalera that made her a foreseeable victim of his violent acts, which were predictable, if not inevitable, and which set her apart from the public.

48.    The Defendants, as state actors, used their authority to create the risk which resulted in the harm to the Plaintiff and created an opportunity for danger that otherwise would not have existed. They acted affirmatively with the power of the state to violate Court Orders, a detainer, and the law, by wrongfully providing Escalera the freedom and opportunity to assault the Plaintiff, which otherwise would not have existed had they not participated in, and/or directly or indirectly assisted in, effectuating Escalera's wrongful release.

49.    In fact, the Defendants, as state actors, used their authority to create an opportunity that otherwise would not have existed for Escalera to commit both the torts and the crimes which he did, upon the Plaintiff.

50.    Stated otherwise, the Plaintiff's sole and immediate source of protection from potential harm to her by Escalera, were the Court's Orders and a federal detainer, which required that Escalera be placed in continuous institutional custody in the Lehigh County Jail where he could not harm her, and that very protection was completely and wrongfully eliminated and otherwise terminated by the Defendants' affirmative acts of intentionally releasing Escalera to permit his assault upon the Plaintiff.

51.    The County of Lehigh is rendered liable for the acts or omissions of its Defendant policy/decision makers and supervisors, Warden Russel and

22

Director of Corrections Janine Donate where they have failed to act and the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to resulting violation of constitutional rights, that the policymaker and/or supervisor can be said to have been deliberately indifferent to the need.

52. The County of Lehigh knows that, on virtually a daily basis, those persons which it employs at the Lehigh County Jail will confront the decision of whether or not to release a prisoner into the public and that such situations often involve difficult decisions requiring multiple inquiries and the satisfaction of multiple redundancies to safeguard against the potential for constitutional harms if a prisoner is wrongfully released upon the public in general, and any potential victims whom that prisoners continued custody was intended to protect.

53. It was Warden Russel's and Director of Corrections, Janine Donate's joint obligations as both decision / policymakers and supervisors to see to it that prisoners who are remanded to the custody of the Lehigh County Jail remain there until released by a court of competent jurisdiction. In fact, it is arguably their most fundamental obligation to see to it that prisoners entrusted to their custody remain separated from society for the protection of those persons beyond the walls of the Lehigh County Jail.

54.     The County of Lehigh and its Warden, Kyle A. Russel and its Director of
        Corrections, Janine Donate, who each act in capacities as both decision /
        policymakers and supervisors to the subordinates who participated in the
        wrongful release of prisoner Escalera, providing him the foreseeable
        opportunity to harm the Plaintiff, were obligated to act in accordance with
        Pennsylvania regulations which given the release of inmates like Escalera.

55.     Under those regulations, the Lehigh County Jail which they oversaw the
        operations of, was required, *inter alia*, to adopt a "written local policy" that
        requires it to verify the "proper legal authority and completeness of
        paperwork" before releasing any inmate. 37 Pa. Code §95.222(2)(i).

56.     Under those regulations, the Lehigh County Jail which they oversaw the
        operation of, was required, *inter alia*, to adopt a "written local policy"
        which specifically includes a "[r]eview of inmate file for detainers" before
        releasing any inmate. 37 Pa. Code §95.222(2)(ii)(B).

57.     Under those regulations, the Lehigh County Jail which they oversaw the
        operations of, was required, *inter alia*, to provide the "[v]ictim notification"
        before releasing any inmate. 37 Pa. Code §95.222(2)(ii)(F).

58.     Under those regulations, the Lehigh County Jail which they oversaw the
        operations of, was required, *inter alia*, to provide "minimum" training
        "before being assigned duties", including, *inter alia*, "training as to the

24

contents / application of [Chapter 95 of the Pennsylvania Administrative Code regarding County Correctional Institutions] and their general and specific duties." 37 Pa. Code §95.221 (1).

59. "The minimum requirements listed [above] are deemed to be essential to the safety and security of the County [Jail], [Jail] staff, inmates and the public." 37 Pa. Code §95.220(b)

60. Under those regulations, the Lehigh County Jail which they oversaw the operations of, was required, *inter alia*, to have, in accordance with "the minimum requirements applicable to security" a "[W]ritten local policy [which] must provide for [the] [e]stablishment of emergency plans for responding to emergency incidents" including the wrongful release of a dangerous prisoner." 37 Pa. Code §95.241(3)(i).

61. The County of Lehigh and its Warden, Kyle A. Russel and its Director of Corrections, Janine Donate, who each act in capacities as both decision / policymakers and supervisors to the subordinates who participated in the physical and documenting acts resulting in the wrongful release of prisoner Escalera, providing him the foreseeable opportunity to harm the Plaintiff, unconstitutionally maintained a policy or custom whereby:

1) The aforementioned written policies were not promulgated;

2) The aforementioned written policies, as promulgated, caused the incident of unconstitutional activity complained of here;

3) Necessary and appropriate training was not properly provided as to the performance requirements of these policies;

4) Necessary and appropriate discipline regarding written policies was not maintained;

5) A culture of condoning the unconstitutional acts which occurred as a result of the above was permitted to develop;

6) Necessary and appropriate performance testing and retraining did not regularly occur;

7) No investigation of this or other historical wrongful prisoner releases occurred or occurred with bias, demonstrating a pattern of tactically approving unconstitutional practices.

62. These deficiencies, which also reflect acts and omissions which violate national correctional standards, and best practices, were intentional and, so obvious as to reflect a deliberate indifference to the unconstitutional consequence which would likely follow under the present circumstances whereby the Plaintiff was seriously harmed by Escalera, a wrongfully released prisoner, and can be said to be the moving force behind that harm,

without which the alleged Constitutional infractions would no have occurred.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their individual capacities and, such other relief, including injunctive relief, which the Court may find appropriate.

**<u>COUNT II</u>**
**Direct Negligence and Vicarious Liability – State Claim**
***Against All Defendants***

63.    The Plaintiff incorporates by reference the preceding paragraphs as if once again set forth here.

64.    Under Pennsylvania law, a party may be found liable if negligence constitutes a conduct that affords to a third person the opportunity to commit a tort or a crime on another, and if the party either knew, or had reason to know that such negligence might give rise to a situation where such misconduct will occur.

65.     Such liability is well-established and is recognized in §448 of the second of Restatement of Torts, which has been cited with approval by Pennsylvania courts.

66.     Here, the Defendants were clearly grossly negligent in wrongfully releasing prisoner Escalera, a known mentally disturbed prisoner, with a prior history of violent propensities, which were not only known by or should have been reasonably known by the Defendants, but were actually known to have been previously directed toward the Plaintiff specifically, under circumstances where those prior violent acts directed towards the Plaintiff, were actually the exact cause of the incarceration from which Escalera was wrongfully released. Thus, the Plaintiff was not only among a class of Escalera's likely victims but, clearly, was his most probable, if not inevitable individual target.

67.     Escalera's assault upon the Plaintiff in her own home only minutes after his release was foreseeable, if not predictable, and was made virtually inevitable by the Defendants failure to warn the Plaintiff, or any other law enforcement personnel or entities, of his pending release, so that the Plaintiff might possibly avoid Escalera's assault, or otherwise protect herself against it, which was legally required.

68.   The Defendants participation in the wrongful release of prisoner Escalera was done in violation of prevailing law, in violation of federal court Orders and detainers, in violation of well-established correctional requirements, in violation of the Pennsylvania Administrative Code standards governing County Correctional Institutions such as the Lehigh County Jail, and national standards, including those of the American Correctional Association, and constitute negligence, gross negligence and negligence per se, and here the direct, proximate and legal cause of the harms inflicted upon the Plaintiff as detailed herein.

69.   The acts and/or omissions of the Defendants which resulted in the wrongful release of prisoner Escalera and the harms he thereafter was able to inflict upon the Plaintiff, are actionable under §448 of the Second Restatement of Torts because:

1) Said acts and/or omissions by the Defendants afforded prisoner Escalera the opportunity to commit a tort and/or crime upon the Plaintiff;

2) The Defendants either knew or had reason to know that such negligence might give rise to prisoner Escalera's later assault upon the Plaintiff; and

3) Such assault did, in fact, predictably occur, directly and proximately causing the harms to the Plaintiff as alleged herein.

29

70.     The County of Lehigh was deliberately indifferent to the health, safety and welfare of the Plaintiff and her Constitutional rights by failing to both train and supervise its employees to follow appropriate protocols as well as redundant correctional safeguards, to avoid wrongfully releasing a dangerous prisoner, especially without prior warning to a foreseeable victim of his dangerous propensities so that she could attempt to immediately protect herself, and/or otherwise have the wrongfully released prisoner immediately captured and returned to custody.

71.     In additional to the direct liability of the County of Lehigh for gross negligence and deliberate indifference to the health, safety and welfare of the Plaintiff, due to its own acts and/or omissions, committed through its Warden and Director of Corrections as supervisors and policymakers, the County of Lehigh is also vicariously liable for the acts and omissions of its presently unidentified employees who acting alone or, together, by their willful misconduct intentionally effected Escalera's wrongful release, during and within the scope of their employment.

72.     The intentional, wrongful release of prisoner Escalera participated in, and effected jointly and/or severally, by one or more agents or employees of the County of Lehigh and/or its Jail, constituted willful misconduct and was committed in a deliberate, intentional, wanton disregard for the

serious harms which were inflicted upon the Plaintiff as stated hereinbefore, entitling the Plaintiff to receive punitive damages in addition to compensatory damages, costs and attorney's' fees as permitted by law, from all Defendants but the County of Lehigh itself.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount in excess of the One Hundred Fifty Thousand Dollar ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with punitive damages against Defendants in their official capacity and, such other relief, including injunctive relief, which the Court may find appropriate.

### OTHER

73. Plaintiff respectfully requests a jury to deliberate upon the within causes of action.

74. The within case is not subject to arbitration.

75. Where permitted, the Plaintiff demands reasonable legal fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court.

76. Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring the within described practices by the Defendants to be unlawful, and enjoining their present and

continued employment and effects, and appointing a monitor to supervise the legal conformity of same.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court for each Count alleged:

a. Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

b. Award punitive damages to Plaintiff against all Defendants, in their individual capacities, jointly and severally, in an amount in excess of $150,000.00 exclusive of interest and costs;

c. Award reasonable attorney's fees and costs to the Plaintiff, as may be awardable pursuant to 42 U.S.C. Section 1988, the Civil Rights Attorney's Fees Award Act of 1976, or any other appropriate statutory provisions;

d. Enter an Order enjoining Defendants from engaging in the future in the conduct identified in the Complaint as violative of 42 U.S.C. §§ 1983, 1988, the 4th Amendment of the Constitution of the United States, and cognate sections of the Pennsylvania Constitution; and further affirmatively requiring the Defendants to engage in appropriate remedial efforts to adopt, and enforce, policies that are calculated and

intended to preclude the conduct alleged to have been engaged in by the Defendants named herein and providing for the independent monitoring of same; and

e. Award such other and further relief, as this Court may deem appropriate.

Respectfully Submitted,

Dated: August 3, 2023          By: _____

Joshua E. Karoly, Esquire
PA Attorney I.D. # 206076
527 Hamilton Street
Allentown, PA 18101
(610) 437-1252
j.karoly@karolyfirm.com
Attorney for Plaintiff